IN THE UNITED STATES DISTRICT COURT
MIDDLE DISCTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| TRACY ANDRIANO | )<br>) |
| Plaintiff, | )<br>) |
| v. | ) NO:<br>) |
| TYSON FOODS, INC.,<br>TYSON FRESH MEATS, INC.,<br>a subsidiary of Tyson Foods, Inc. | ) JUDGE:<br>) MAGISTRATE:<br>)<br>) JURY DEMAND:<br>) |
| Defendants. | )<br>) |

## COMPLAINT

COMES NOW the Plaintiff, **Tracy Andriano**, by and through counsel, and alleges the following in her cause of action against Defendants: Count One: Violations of Title VII of the Civil Rights Act of 1964, as amended; 42 U.S.C. § 2000e, and Count Two: Retaliation under Title VII.

## JURISDICTION AND VENUE

1. This action is brought under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, and Retaliation under Title VII.

2. This Court has jurisdiction under 28 U.S.C. 1331 to hear Plaintiff's claims arising under the Constitution and laws of the United States.

3. This Court has jurisdiction under 28 U.S.C. 1343(4) to hear Plaintiff's claims to recover damages and to secure equitable relief under any Act of Congress providing for the protection of civil rights.

1

4. This Court has supplemental jurisdiction over all state law claims alleged in this complaint under 28 U.S.C. 1367 as there is a common nucleus of operative facts between state and federal law claims.

5. Venue is appropriate in the Middle District of Tennessee under 28 U.S.C. 1391(b)(2) as this is the judicial district in which a substantial part of the events or omissions giving rise to this claim occurred.

## PARTIES

6. Plaintiff, **Tracy Andriano**, was a resident of Hendersonville, Sumner County, Tennessee at all times relevant to this cause of action.

7. Defendant, **Tyson Foods, Inc.**, is a for profit foreign corporation whose principle place of business is Mail Code CP131, 2200 Don Tyson Parkway, Springdale, Arkansas 72762. The registered agent for Tyson Foods, Inc. is C T Corporation System, 800 Gay Street, Suite 2021, Knoxville, Knox County, Tennessee 37929-9710.

8. Defendant, **Tyson Fresh Meats, Inc.**, a subsidiary of Tyson Foods, Inc. is a for profit foreign corporation whose principle place of business is Mail Code CP131, 2200 Don Tyson Parkway, Springdale, Washington County, Arkansas 72762. The business location known as Tyson Fresh Meats, Inc. ("Plant") is located at and licensed to do business at 201 Cartwright Street, Goodlettsville, Davidson County, Tennessee 37072. The registered agent for Tyson Fresh Meats, Inc. is C T Corporation System, 800 Gay Street, Suite 2021, Knoxville, Knox County, Tennessee 37929-9710.

## GENERAL FACTUAL ALLEGATIONS

9. Plaintiff was a female employee of Defendant, hired in October 2013, as an Occupational Health Nurse at the business location known as Tyson Fresh Meats, Inc. ("the

Plant") located at 201 Cartwright Street, Goodlettsville, Davidson County, Tennessee 37072. Plaintiff treated injuries that occurred on the job, or as employees needed during their shifts.

10. Plaintiff was hired on or about October 15, 2013, and her starting pay was $28.50 an hour. After 90 days on the job, she received a pay increase to $31.00 an hour. During her employment, Plaintiff received praise and recognition for her work performance.

11. Plaintiff was scheduled to work the "B-shift" from 4:00 p.m. to 12:30 a.m. Due to occurrences during her shift, many times she was unable to leave until 1:30 or 3:00 in the morning.

12. Plaintiff often worked six days a weeks and frequently worked shifts eight hours or longer by herself and without a break.

13. In December 2013, Plaintiff was called to a meeting of various personnel to at the Plant. Personnel present at the meeting included Plant Manager, Steve Ligen as well as a new supervisor, James Ewing.

14. During the incident investigation meeting, Ewing made a comment to Plaintiff that he wanted to "see how far I can get with you." The Plant Manager, Doug Griffin, reported the incident to Human Resources, and the incident was supposedly documented in an "incident report."

15. In January 2014, Defendant hired another nurse, Maria Dorris, to help Plaintiff on the B-shift (evenings).

16. One of Defendants' employees, Driton Gashi, frequently went out of his way to talk to Plaintiff while she was working. Gashi occasionally brought Plaintiff candy at the end of his shift.

17. Gashi is the brother-in-law of an A-shift General Manager, Valon Arifi, who was good friends with Plant Manager Doug Griffin.

18. Thursday, April 10, 2014, Gashi stopped by the nurses' office when Plaintiff was there, came into the office and closed the door. By this time Dorris had already left and Plaintiff was there alone. Gashi stated "I know you're alone," and asked her to go to dinner with him. Gashi grabbed Plaintiff's hand and would not release her after she protested. She got up to leave the office and Gashi chased her. Plaintiff ran out the back door through the front and locked him out behind her.

19. Plaintiff then used the radio to call for help. Later, she was officially reprimanded for using the radio to call for help, even though she believed Gashi intended to sexually assault her.

20. Friday, April 11, 2014, Plaintiff reported the incident to Simona Thomas, her immediate supervisor and the Nurse Manager and supervises all of the Occupational Health Nurses. Thomas e-mailed Steve Voller, Gashi's General Manager, stating that Gashi was "talking" to Plaintiff and taking up too much of her time.

21. Thomas informed Plaintiff that she would not go to Human Resources about this matter because it would cause Human Resources to "not like" Plaintiff. That same evening, Gashi walked by the nurses' office and made obscene gestures in the window of the nurses' office.

22. Voller did not return to work until April 14, 2014. When he returned, he watched the security footage of the obscene gestures made by Gashi Friday evening at the nurses' window. Voller apologized and informed Plaintiff he would report the incident to Human Resources. He

4

stated the incident "wasn't handled right" and that Gashi has a history of this type of behavior.

23. That same day, Gashi stopped by the nurses' office and stared in the window for a length of time, glaring at Plaintiff.

24. Later, Plaintiff was asked to sign a paper regarding Human Resources' handling of the incident. The paper said the incident had been "taken care of." Plaintiff believed she had no choice but to sign the paper. Her manager, Thomas, informed Plaintiff that if Plaintiff had a problem, she needed to speak with Thomas rather Human Resources or anyone else.

25. After the incident was reported to Human Resources, Plaintiff's co-workers stopped talking to her and treated her as if she was "invisible."

26. For the next two weeks, Plaintiff's shift mate, Doris, was removed from the shift and Plaintiff had no choice but to work alone in the evenings.

27. On Monday, May 5, 2014, a team member from the plant floor came to the nurses' office for a medical evaluation for a minor issue. The team member requested to be removed and placed somewhere else, and stated that if she was placed back on the line, she would lie and claim that her hand had been injured on the line.

28. Thomas, to whom Plaintiff would have typically brought this type of incident, was absent, therefore Plaintiff brought the issue to Human Resources instead.

29. On Tuesday, May 6, 2014, Thomas and the Human Resources representative, Audrey Cooper, called Plaintiff to a conference and reprimanded her for bringing the complaint to Human Resources and not to Thomas.

30. When Plaintiff attempted to explain the reason, Cooper, threatened to write up Plaintiff for the trivial matter of having her cell phone in her pocket (which was not an unusual practice by the nurses).

5

31. Thomas and Cooper began questioning Plaintiff about her personal life, including asking her about her marriage and a miscarriage she had in 2010. They informed her that they were aware she had previous history of depression and had taken medication for the depression. The situation made Plaintiff cry, and Cooper threatened to send Plaintiff home for crying.

32. At that time, Cooper's supervisor, Gary Denton, came into the room. Plaintiff stated that she wanted to call the company hotline to complain. The supervisor refused her request.

33. Thomas proceeded to tell Plaintiff she should not have involved Human Resources, and the complaint of harassment and the team member should have gone through Thomas not Human Resources. Thomas told Plaintiff "You went to HR and brought this on yourself."

34. The following evening, Wednesday, May 7, 2014, Cooper called Plaintiff at 9:00 requesting for a statement about the sexual harassment concerning Gashi. Cooper demanded the statement immediately. When Plaintiff did not provide the statement over the phone, Cooper arrived at the nurses' office and informed Plaintiff that she would wait in front of Plaintiff until the statement was complete and stated that Plaintiff could write the statement then or lose her job.

35. Plaintiff called Thomas. Thomas informed Plaintiff that she "brought this on [herself]." Cooper placed the call between Plaintiff and Thomas on speaker. Dorris, the other evening nurse who was still in training, was also in the room.

36. Plaintiff wrote the statement for Cooper. Plaintiff believed she had no choice but to resign, and that she was being forced to resign in retaliation for the complaints she made

6

concerning sexual harassment. Thomas stated it was Plaintiff's fault for reporting the incident to Human Resources.

37. Two days later, on Friday, May 9, 2014, Plaintiff called the company hotline to complain about the sexual harassment and retaliation against her. Her call was not returned, so she called the hotline again on Thursday, May 15, 2014. As of Friday, May 16, 2014, Plaintiff never had her calls returned.

38. Defendants took no action regarding the sexual harassment and retaliation occurring against Plaintiff. Gashi was not disciplined or sent home for his repeated sexual harassment towards Plaintiff.

39. Plaintiff suffered severe emotional distress resulting in suicidal thoughts, depression, constant crying and a fear of leaving her home by herself and being alone with men.

40. Plaintiff filed her EEOC Charge and has received her right to sue letter.

## COUNT ONE

### Violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e

41. Plaintiff incorporates herein by reference the factual allegations outlined in Paragraphs 1 through 40.

42. During all times complained herein, Defendants were an employer under the terms of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, and as such Defendant is subject to the rule, regulations and penalties of this law.

43. During all times complained herein, Plaintiff was a member of a protected class under Title VII as she was discriminated against by her employer on account of her gender.

7

44. Defendants harassed Plaintiff based on her gender when Defendants engaged in, condoned, and ratified harassing and discriminatory conduct of its employees as evidenced by acts or omissions complained of herein.

45. The gender discriminatory conduct of Defendants' employees was pervasive enough that it created a hostile work environment for Plaintiff by negatively altering the conditions of her employment.

46. This discrimination on the part of Defendants constitutes a violation of the Plaintiff's rights under Title VII.

47. Defendants are directly or vicariously liable for discrimination under Title VII, which results from the discriminatory practices and policies of its supervisors and managers of Defendants.

48. The discrimination and retaliation on the part of Defendants constitutes a violation of the Plaintiff's rights under Title VII.

49. The discriminatory employment practices described herein have caused Plaintiff to experience harm, including loss of compensation and other employment benefits. Plaintiff has further suffered emotional distress, humiliation, indignity and resulting injury and loss along with other damages.

## COUNT TWO

### Retaliation in Violation of Title VII

50. Plaintiff incorporates herein by reference the factual allegations outlined in paragraphs 1 through 49.

51. Defendants' intentional acts and omissions as described herein constitute adverse employment actions in retaliation for Plaintiff's complaints of sexual harassment and discrimination under violation of Title VII.

52. Defendants retaliated against Plaintiff by telling Plaintiff the situation she was experiencing at work was "her fault" and that she "brought this on herself" for reporting sexual harassment to Human Resources; threatening her if she did not write the statement; subjecting her to discipline for petty actions; and, finally, forcing her to resign.

53. Defendants, through their employees/agents, placed Plaintiff in intolerable working conditions by knowingly permitting the pervasive sexual harassment by Defendants' employees toward Plaintiff and the hostile work environment to continue, thereby creating intolerable working conditions with the specific intent to force Plaintiff to resign due to her complaints of sexual harassment.

WHEREFORE, Plaintiff prays:

1. For a jury to be empaneled and a judgment of compensatory damages to include front pay, back pay and emotional suffering;

2. Attorneys' fees and the cost of litigation to include expert fees;

3. Damages for humiliation, embarrassment, emotional pain and other damages;

4. All other remedies and injunctions as are necessary and proper to eliminate the discriminatory and harassing practices of Defendant;

5. Punitive damages;

6. A judgment against Defendant for prejudgment interest; and

7. Such other relief as this Court deems proper.

Respectfully submitted,

ANDY L. ALLMAN & ASSOCIATES

*(signature)*

Andy L. Allman, BPR No. 17857
R. Patrick Parker, BPR No. 16847
131 Saundersville Road, Suite 110
Hendersonville, Tennessee 37075
Telephone: (615) 933-0110
Facsimile: (615) 265-8766
andy@andylallman.com
pparker@hardaway.net
*Attorneys for Plaintiff*

10

Case 3:15-cv-00863   Document 1   Filed 08/06/15   Page 10 of 10 PageID #: 10